**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Pollack Landstrom Associates,

Plaintiff,

v.

Civil No. 00-123 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

Labtec Corporation,

Defendant.

---

Before the Court is Defendant Labtec Corporation's ("Labtec") Motion in Limine concerning the extent to which Plaintiff Pollack Landstrom Associates ("Pollack Landstrom") may cross-examine Russell Weed, Labtec's present general counsel. Weed, while working as outside counsel for Labtec, authored an October 29, 1999 letter on behalf of Labtec that informed Pollack Landstrom it was being terminated as Labtec's sales representative because Labtec's main customer in the Upper Midwest, Best Buy, had "made clear its dissatisfaction" with Pollack Landstrom's representation of Labtec and had "communicated that its dissatisfaction is not curable, and that Labtec's relationship with Best Buy will be damaged if Labtec continues to utilize [Pollack Landstrom] as its sales representative." (First Andressen Aff. Ex. B (October 29, 1999 termination letter).) Labtec submitted an offer of proof regarding the substance of Weed's testimony, to which Pollack Landstrom has filed a response.



FEB 21 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Also before the Court is Pollack Landstrom's request that it be permitted to present evidence regarding its alleged "favored nation" status as a sales representative for Labtec. Pollack Landstrom claims that its relationship with Labtec was structured on "successive one year terms, which renewed each year on April 1." (See Pl.'s Response to Def.'s Trial Brief at 1.) Pollack Landstrom also alleges that its oral agreement with Labtec included a "favored nation" provision which prevented Labtec from terminating Pollack Landstrom except "for cause" and only after giving Pollack Landstrom at least 120 days to cure the alleged problem. The alleged "favored nation" status is significant to plaintiff's wrongful termination claim because that status affords Pollack Landstrom greater protection than Minnesota's Termination of Sales Representatives Act, Minn. Stat. § 325E.37.

When Labtec moved for summary judgment on Pollack Landstrom's wrongful termination claim, it assumed that the oral contract between the parties was as Pollack Landstrom claims. Pollack Landstrom opposed the motion for summary judgment with several arguments, including the assertion that genuine issues of material fact existed as to whether Labtec had violated the "favored nation" term of the agreement. The Court declined to address the "favored nation" argument on the grounds that the "favored nation" term was part of an oral contract that apparently could not be performed within one year from the making thereof; hence, enforcement of the contract was barred by the statute of frauds. Pollack Landstrom has asked the Court to reconsider that statute of frauds determination. The Court considers each issue in turn.

## I. The Testimony and Cross-Examination of Weed.

### A. The Investigation Into Pollack Landstrom's Performance

Weed will testify that, between late August and late October 1999, he had at least four discussions with senior Labtec managers regarding Pollack Landstrom's performance in representing Labtec. (Labtec Offer of Proof at 2-3.) Weed will testify that these managers made several statements to him reflecting their concerns (and the concerns of their colleagues) that Labtec might lose the Best Buy account due to Pollack Landstrom's performance. (Id.) Weed will further testify that Mark Gurney told him that he needed to investigate the situation further. (Id. at 2.) Weed will also testify that, when Gurney contacted him again in October of 1999, Gurney made the following statements:

- The main buyer of Labtec's products at Best Buy, Ryan Tykwinski, had said that Labtec's representation at Best Buy was "less than strategic," and that there was a lack of "local, daily contact" and a lack of "strategic local representation";
- Other customers believed Pollack Landstrom to be less than strategic;
- He [Gurney] had concluded that Best Buy was unhappy with Pollack Landstrom;
- He [Gurney] had concluded that it was necessary to terminate and replace Pollack Landstrom; and
- Labtec had concluded that Pollack Landstrom was not adding value to the relationship between Labtec and its customers.

(Id. at 2-3.) Finally, Weed will testify that Gurney and Greg Jones, Labtec's then Senior

Vice President of North American Retail Sales, told him that they did not think the situation was fixable. (Id. at 3.) Following these conversations, Labtec directed Weed to prepare the October 29, 1999 termination letter. Labtec argues that Weed's testimony is relevant to the issues of "good cause" for termination and whether the statements in the termination letter, if defamatory, were also "privileged."

### 1. "Good Cause" for Termination

On the issue of "good cause," Labtec claims that it is entitled to offer Weed's testimony in order to "'corroborate' Labtec's concerns that continuing with Pollack Landstrom could cause Labtec to lose Best Buy's business." (Labtec Offer of Proof at 3.) To "corroborate" that fact, however, Labtec would have to offer Weed's testimony about the Labtec executives' out-of-court statements for the truth of the matter asserted in those statements -- i.e., that the Labtec executives were actually concerned that Pollack Landstrom was endangering the Best Buy account. Offered for that purpose, Weed's proposed testimony would be hearsay. Fed. R. Evid. 801(c).

In its reply brief, Labtec abandons the argument that the statements made to Weed by Gurney and Jones would "corroborate" good cause. Instead, Labtec argues that it is entitled to offer Weed's testimony to establish the fact that Weed, who authored the challenged letter on behalf of Labtec, was told certain things by Labtec executives before he wrote the challenged letter. For example, Weed's testimony would be offered to establish the fact that Labtec told Weed it had concluded that Best Buy was unhappy with

Pollack Landstrom, **not** to establish either the fact that Labtec had actually concluded that Best Buy was unhappy with Pollack Landstrom or the fact that Best Buy was actually unhappy with Pollack Landstrom. The Court agrees that, if offered to prove what Weed was told before writing the termination letter, Weed's testimony would not be hearsay. The Court further concludes, however, that Pollack Landstrom will have broad latitude on cross-examination to clarify with the jurors those facts which Weed's testimony does not purport to establish.

In any event, the Court will not permit Weed to testify about what Messrs. Gurney and Jones said Tykwinski or "other customers" said about Pollack Landstrom's performance. Labtec has acknowledged that it wants to introduce Weed's testimony about the Tykwinski comments in order to "corroborate" the statements that Messrs. Gurney and Jones's will testify Tykwinski made to them about Pollack Landstrom. (Labtec Offer of Proof at 3.) Weed's testimony concerning specific statements made by Tykwinski and others is clearly being offered for the truth of the matter asserted by the declarant Tykwinski, and involves multiple layers of hearsay. Accordingly, the testimony is inadmissible under Rules 801(c), 802 and 805 of the Federal Rules of Evidence.

**2. Privilege for the Alleged Defamatory Statement**

Labtec contends that Weed's testimony is also relevant to whether Labtec's allegedly defamatory statements were privileged.

A communication, to be privileged, must be made upon a proper occasion,

> from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover.

Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 256-57 (Minn. 1980)). The question of whether the statement is based on reasonable cause is for the jury to resolve. See Palmisano v. Allina Health Sys. Inc., 190 F.3d 881, 885 n.2 (8th Cir. 1999) (construing Minnesota law). Labtec asserts that Weed's testimony will establish that "there indeed was an investigation and that it took place over several months." (Labtec Offer of Proof at 4.) Labtec claims this testimony is relevant to whether the alleged defamatory statements were based on reasonable or probable cause. (Id.) However, Labtec concedes that Weed has no personal knowledge as to whether an investigation took place or the results of that investigation; Weed was relying on information supplied by Messrs. Gurney and Jones. (Labtec Reply at 1.) Weed therefore is not competent to testify concerning the nature or extent of whatever investigation Labtec performed and will not be permitted so to testify.

### 3. Prior Invocation of Attorney-Client Privilege

In opposing Labtec's offer of proof, Pollack Landstrom complains that, during discovery, Labtec repeatedly invoked the attorney-client privilege to block Plaintiff's inquiry into the very conversations between Weed and Messrs. Gurney, Wick, and Jones that Labtec now wants to present at trial. Thus, Labtec frustrated Pollack Landstrom's

efforts to look behind the October 29 termination letter by asserting the attorney-client privilege; it now wants to waive that privilege to establish what lay behind the letter.

The Court concludes that Pollack Landstrom has been prejudiced by Labtec's post-discovery decision to waive the privilege. Pollack Landstrom expended substantial time and expense in deposing Messrs. Wick, Gurncy, and Jones, and was unable to conduct full discovery at that time into areas about which Labtec now proposes to have Weed testify. Accordingly, the Court will permit Labtec to elicit testimony from Weed on the matters identified, supra, in sections 1 and 2 of this Memorandum Opinion and Order, provided that, prior to the first day of trial, Labtec (1) produces Weed for deposition by Pollack Landstrom in Minnesota at a time mutually convenient to the parties; and (2) produces Messrs. Wick, Gurney, and Jones for further deposition by Pollack Landstrom in Minnesota at a time mutually convenient to the parties. Labtec shall bear the costs of these depositions, including the cost of bringing the witnesses to Minnesota and reasonable attorneys' fees.

**B. The Terms of Other Sales Representative Agreements with Labtec**

Labtec also indicates that it will call Weed to testify about Labtec's agreements with other sales representatives. Labtec states that Weed will testify that these other agreements all have an indefinite term. From those agreements, Labtec has created a summary exhibit purporting to show the various terms of the agreements, including their duration.

To the extent that Weed is the custodian of the documents Labtec intends to introduce into evidence, he will be permitted to lay the foundation for their admissibility. The Court will further permit Weed to testify about the existence and terms of Labtec's written agreements with other sales representatives. The Court concludes, however, based upon the record before it, that there is no foundation for Weed's testimony as to any oral sales representative agreements in existence prior to his employment as Labtec's in-house counsel. Furthermore, the Court will sustain Pollack Landstrom's objection to the summary exhibit; to the extent the written agreements exist and can be admitted into evidence, there is no need for a summary exhibit.

## II. Pollack Landstrom's Alleged "Favored Nation Status.

Pollack Landstrom asks the Court to reconsider its determination that the statute of frauds would bar enforcement of the oral contract Plaintiff had alleged, including the term providing for "favored nation" status. First, Pollack Landstrom asserts that the statute of frauds does not apply to the contractual relationship at issue here, for successive one-year terms. Second, Pollack Landstrom contends that, if the statute of frauds does apply, Labtec has waived the defense by admitting to the existence of the "favored nation" term that Pollack Landstrom is seeking to enforce.

With respect to the first grounds for reconsideration, Pollack Landstrom argues that "an agreement for a one year period does not fall within the statute of frauds." (Pl.'s Response to Labtec's Trial Mem. at 3.) Pollack Landstrom cites no authority from

Minnesota or any other jurisdiction squarely supporting that position. The only case Pollack Landstrom discusses, Roaderick v. Lull Engineering Co., 296 Minn. 385, 208 N.W.2d 761 (1973), involved a contract requiring a minimum term of two years of employment. Roaderick, 296 Minn. at 388, 208 N.W.2d at 763. Such a contract, by its terms, clearly cannot be performed "within one year." Unlike the contract at issue in Roaderick, the alleged agreement between Pollack Landstrom and Labtec was for successive one-year terms, each term beginning at the start of Labtec's fiscal year on April 1. The Minnesota Supreme Court has specifically considered the circumstances under which a one-year contract for services is subject to the statute of frauds.

In O'Donnell v. Daily News Co., O'Donnell accepted an offer for employment with the Daily News on January 31, 1910, and the parties agreed that O'Donnell could start work on February 7. O'Donnell v. Daily News Co., 119 Minn. 378, 381, 138 N.W. 677, 678 (1912). By the time O'Donnell arrived for work on February 7, however, the Daily News had decided that it did not require his services and refused to allow him to do any work. Id. at 383, 138 N.W. at 678. The contract between the parties was for one year of services, rather than for an indefinite term. Id. at 384, 138 N.W. at 679. The Minnesota Supreme Court therefore considered whether the contract was within the statute of frauds, "as being a contract not to be performed within one year from the making thereof." Id. at 385, 138 N.W. at 679. The court reasoned that, under the terms of the statute of frauds, "a contract for one year's services commencing on the date of the

contract is not within the statute," id. (emphasis added), whereas a contract for one year's services to be performed in the future is within the statute. Id.; see also Borchardt v. Kulick, 234 Minn. 308, 312, 48 N.W.2d 318, 321 (1951). The court therefore concluded that, because performance of the one year contract was to begin on February 7 – one week after the contract was made – it was impossible for performance to be completed "within one year" of the making of the contract.[1] O'Donnell, 119 Minn. at 387, 138 N.W. at 680. O'Donnell's enforcement of the contract was thus barred by the statute of frauds.

Under the Plaintiff's view of the contract -- a series of successive one-year terms that began automatically each year on April 1 -- the sales representative agreement would not fall within the statute of frauds. The Defendant contends that the sales representative agreement was for an indefinite term; therefore, the agreement, again, would not fall within the statute of frauds. Based upon the record before the Court and the arguments of counsel, there appears to be no basis for barring Pollack Landstrom's enforcement of the oral contract on the grounds of the statute of frauds.

Even if the statute of frauds did apply to Pollack Landstrom's contract with Labtec, however, Pollack Landstrom would nevertheless be entitled to present evidence regarding its alleged "favored nation status." It is well settled that the purpose behind the Statute of Frauds is the prevention of "frauds and perjuries by denying force to oral

---

[1] The Minnesota Supreme Court held that it made "no difference that the year is exceeded by only a week, for the doctrine of de minimus cannot be invoked to avoid the operation of the statute of frauds." O'Donnell, 119 Minn. at 387, 138 N.W. at 680.

contracts of certain types which are peculiarly adaptable to those purposes." Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 423 (Minn. Ct. App. 2000) (internal quotation marks omitted). Pollack Landstrom argues that such a concern is not implicated here because Labtec has admitted to the very contract term Pollack Landstrom seeks to enforce. The Court agrees. Labtec has acknowledged in deposition testimony that Pollack Landstrom enjoyed "favored nation status" through at least 1998. Furthermore, in its pre-trial submissions, Labtec does not take issue with Pollack Landstrom's assertions that Labtec referred to certain sales representatives as "favored nation" representatives, or used "favored nation" terminology when referring to Pollack Landstrom. Accordingly, Pollack Landstrom should be permitted to introduce evidence regarding its alleged "favored nation" status.

## Conclusion

Based on the all of the files, records and proceedings herein, including the arguments and memoranda of counsel, and for the reasons stated on the record, **IT IS ORDERED THAT**

1. Defendant Labtec Corporation shall not present testimony from Mr. Weed regarding the following subjects: (a) statements made by Ryan Tykwinski or "other customers" to Labtec employees regarding Pollack Landstrom's representation of Labtec; (b) the nature or scope of Labtec's investigation into Pollack Landstrom's representation

of Labtec in the Northern States; (c) the duration or other terms of any oral sales representative agreement with Labtec entered into before Weed began his employment with Labtec; and (d) the summary exhibit concerning the duration and other terms of agreements between Labtec and other sales representatives;

2. Labtec may present testimony from Weed on the matters identified, supra, in sections I.A.1 and I.A.2 of this Memorandum Opinion and Order, provided that, prior to the first day of trial, (a) Labtec produces Mr. Weed for deposition by Pollack Landstrom in Minnesota at a time mutually convenient to the parties; (b) Labtec produces Messrs. Wick, Gurney, and Jones for further deposition by Pollack Landstrom in Minnesota at a time mutually convenient to the parties; and (c) Labtec bears the costs of these depositions, including the cost of bringing the witnesses to Minnesota and reasonable attorney's fees;

3. The Court shall entertain a motion by Pollack Landstrom, brought anytime after the first day of trial, for an award of attorney's fees incurred by Pollack Landstrom in taking any of the depositions identified in paragraph 2, above;

4. That portion of Defendant Labtec Corporation's Motion in Limine (Doc. No. 52) regarding the permissible extent of Pollack Landstrom's cross-examination of Russell Weed is **DENIED**; and

5. Plaintiff Pollack Landstrom shall be permitted to introduce evidence regarding its alleged "favored nation" status with Labtec.

Dated: February 21, 2001

RICHARD H. KYLE
United States District Judge